Okay, the next case on our docket is 5-130576 People v. Joe Tucker Jr. Mr. McCarthy? Yes. Excuse me one second. Your honors, counsel, may it please the court. My name is John McCarthy. I'm from the 4th District Appellate Defender's Office. I represent Joe Tucker in this matter. It is dismissal of the second stage post-addiction petition. The record in this case is replete with instances of counsel disrespecting the court, refusing to follow its rulings, showing the inability to lay proper foundation to key evidence. I want to demonstrate this before going into the actual trial hearts by looking at an incident that happened pre-trial that has a common theme of what happened in opening statements and what happened in closing statements. There was a motion to eliminate a prior jury selection, and the trial court correctly decided that defense counsel was not going to be able to get into the specifics of the state's charged witness, Robin Gatz, past criminal activity. Mr. McCarthy, let me just stop you because I don't understand. There was a direct appeal on this case. Yes, there was. Why weren't these matters brought up on direct appeal? I don't know. We have raised an effective assistance of appellate counsel to tell you to do so. I do know in the 4th District, there was a 4th District attorney who did the case, and when our court is repeated with telepaths, they don't want to hear claims of ineffective assistance of counsel on direct appeal. They want a fuller record developed on post-conviction. So I presume that's what Mr. Peterson was acting under. Well, the Rule 23 order that came out of this court dealt with ineffective assistance of trial counsel. I mean, Judge Stewart. One issue was raised of ineffective assistance. Now, I have no reason why you didn't raise these issues. But it could have been raised. I mean, if you raised, not you, but if the counsel for the defendant raised one, why wouldn't you raise the others? And then there was, I think, a 1401 petition filed, which also the public defender withdrew when that was filed. So the court dismissed the defendant's petition for release from judgment. So I'm kind of befuddled as to why all the issues that we're talking about haven't already been waived or forfeited. Well, they're not waived or forfeited because I'm claiming ineffective assistance of the appellate counsel. The appellate counsel should have raised these issues previously. So what effect does a 1401, what effect did that 2-1401 petition have, if any? I don't think it has any impact at all. So you don't think the court could construe that as a post-conviction petition? Could a court construe that as a post-conviction? Not after it's already been cited as a 1401 petition. Well, the state appellate defender withdrew as counsel, alleging there was no merit to the appeal. I don't know precisely what issues were raised in the 1401 petition. And typically, I don't think you go outside what the issues the client raised. On appeal, you don't comb through the record looking for new issues to raise. And so if the 1401 petition didn't raise these particular issues, our office would have no inclination going looking for others. In this particular instance, it's now on appeal. I mean, here the court went to second stage and considered the allegations. Not as forfeiture, but considered the allegations and said defendant failed to make a substantial showing of a constitutional violation, right? In other words, this wasn't decided based on forfeiture in the trial court. Correct. Okay. At this pre-trial hearing, the trial court issued a ruling against my client. And defense counselors began to basically insult the trial court as being biased against Joe Tucker. The trial court told them, you know, I'm really offended by those remarks. I think you really need to stop. Counsel apologized to the court as it very well should have. And then he proceeded to continue to insult the court some more. At which time, co-counsel got up, said to the attorney, I think we need a recess. And the trial court said, yeah, that's a good idea. Now, remember, the subject of that motion eliminated when against trial counsel was that he was not going to be able to go into the specifics of Robin Geck's prior criminal history, which included deviant sexual assault. However, right in his opening statement, he tells the jury, and you're going to learn about Robin Geck. You're going to learn about the details of his past deviant sexual assault conviction. Obviously, the state objects, and defense counsel pulls out. That's just a demonstration. You're not willing to listen to the rulings of the trial court. Then we get to the closing argument, and he begins to tell the jury, and you're going to get this letter from Robin Geck. He sent it to the prosecution that he could help him out with Joe Tucker. And the state got up and objected. The trial court sustained, and counsel went on, and the jury went back for deliberations. The prosecutor of all people is recognizing the train wreck that is occurring in front of him. The prosecutor tells the trial court, Your Honor, I don't care if that whole letter goes back to the jury or not. But there's a paragraph in there in which he says, Oh, yeah, by the way, Joe Tucker's family committed a murder in 1991. I just want to make sure defense counsel wants this whole thing to go back. And defense counsel says, Yes, I want it all to go back. As if he doesn't understand the basic idea that that could have been redacted out of the letter, and the first part of the offer could have been chosen by the jury. What did you think about his closing argument? Oh, the first word that comes to mind is bizarre. I can't explain it. I can't see a jury that would have understood what was going on. I'm at a loss for words. Now, as for his trial strategy, which wasn't actually a bad trial strategy, if he could execute it, it was a three-pronged attack. Joe Tucker's sealant was found on the vaginal swab. So he had to explain that. He had to explain that Robin Gett has tricked Joe Tucker into making these four confessions that he wrote. And the last thing he had to prove to be a real killer was Albert McDaniel. He accomplished the first goal easy enough. He had Joe Tucker testify that he'd known the victim for six or seven years. They worked at Wendy's together. They had sporadic sex on and off over the six-year period. And he had sex with her prior to her being murdered. The second one, he started to accomplish it. And he asked Joe, how did you write these confessions? And he said, well, Robin Gett ran a typewriting service at the prison. I approached him with some questions that I had. And he said he could help me out. And I told him that the real killer was Albert McDaniel. He said, well, I'll tell you what you need to do. I'm going to tell you how the police missed Albert McDaniel. You put yourself in Albert's shoes, and then you tell him everything that happened that night. And the first one was kind of vague, so we kept getting more and more detailed by looking at discovery. And that was Joe's story. Well, Robin Gett gets on a stand, and counsel asks him, did you trick Joe Tucker into writing these statements? No, I did not. So then he followed up. Do you remember talking with me and Kevin McClain in November? Yes, sir. No further questions. So then he calls Kevin McClain to the stand. And he asks Kevin McClain, did you and me meet with Robin Gett in November? Yes, we did. And did he tell us he tricked Joe into writing an objection? Lack of foundation. He didn't know he had to ask Robin Gett, did you say you tricked him into writing these confessions? He could have solved the problem. He could have asked the court for permission to recall Robin Gett to the stand. The problem is he didn't know what mistake he made, and he couldn't fix it. And so he found himself in another biased room on behalf of the trial court. And very quickly, the Albert McDaniel. The key piece of Albert McDaniel's testimony was the fact that he was in the neighborhood, he walked by Jada Reynolds' house at night, looked through a window and saw her laying on a couch. The defense counsel's position was that it was impossible because he couldn't see the couch from the window. And therefore, he attempted to introduce a demonstrative evidence of a drawing. Objection. It's not there on the scale. He had months to prepare for this trial. And he didn't realize if you're doing the lines to cite demonstrative evidence, you have to have it drawn to scale. Do you really even have to do that? I mean, there's a way to get it in without it being drawn to scale, isn't there? If it's just demonstrative. There are foundations you can lay without having it drawn to scale. It loses a lot of its evidentiary value if it's not. Okay. Thank you, Your Honor. All right. Mr. Londrigan? How are you today? Good, Judge. How are you? Good. I haven't seen you in a long time. We're both getting older. Just me. No, no. How are you, Judge? How are you? Welcome. My name is Tim Londrigan. I'm with the 4th District Appellate Prosecutor's Office out of Springfield. Why does the 4th District have this? I don't know, Judge. I guess we didn't have enough to do up there, and you guys had too much, and they shipped it up there. So we have a lovely two-and-a-half-hour drive down here. We have a long drive. Well, at least we did in the afternoon for you. Opposing counsel is from Springfield as well, so yes, it is. Which, you know, you should know that you can call the clerk and make that happen if you ever get one of those morning settings. At the court's pleasure. Okay. I'm sorry. Please give him a few extra minutes. Well, the state's position in this matter is pretty straightforward. We would agree with the court's observation. All of these issues have already been weighed. They could have been brought up on direct appeal. Opposing counsel is correct. They did allege the competency of appellate counsel in order to bootstrap it all in and present it again. That's why we addressed it on the merits. Basically, this is Monday morning quarterbacking at its best. There are no perfect trials. There's always mistakes of some kind in every trial. The fact that there could have been some errors. What did you think of this gentleman's closing argument? I mean, you're a trial lawyer. It was interesting. It was interesting. It wouldn't be my style, but, you know, I've learned long ago not to critique others. You know, guys that I thought were disheveled or unorganized or doing things that I think might embarrass myself have always shown me that they know more than I do. What a jury is looking at and how they become sympathetic or inclined to believe one attorney over the other, everybody has their own style. Well, I tend to agree with you. There have been some people like the Colombo series, you know. Absolutely. Shuffle around and I may think I'll give that myself again occasionally. My partner used to show up with ragged clothing and stains on his tie and shirt and people looking for it. But, you know, he eats his own. So what this gentleman was attempting to do with his stories of whatever he was getting into there, trying to explain away the unexplained. Yes, your client has DNA semen on his victim's underwear. She was obviously raped. You know, how do you explain it? And his attempts at doing so were ridiculous. His attempts at trying to disguise them. We're ignoring the elephant in the room. The guy confessed in writing three times. And he's trying to explain his way. He can't. There is no logical, reasonable explanation for that. And his attempts were just ridiculous. So regardless of whether or not we have a demonstrative piece of evidence that perhaps could have been established. But anyway, they do condemn it. It doesn't establish anything. What they're trying to show by that is that McDaniels, the other guy, the state, of course, believes the defendant did everything. The jury did too. The defendant believes McDaniels, this other character that was in the vicinity, is the one that perpetrated the crime. But McDaniels must have been a person of interest very early on because he gave DNA samples early on. He was very cooperative. He was a person of interest. Nothing was found. He was quite a unique individual. Admitted to all kinds of things that I would have thought he would have been somewhat reluctant to admit to. He was there in the area to rob the house next door. Purportedly, you know, suggested he have a liaison with the victim. Knew the victim's husband was gone from 11 p.m. to 7 a.m. I mean, defense counsel was quite successful in getting out a lot of information from Mr. McDaniels. What he was unsuccessful in doing was establishing that if there was any evidence whatsoever that suggests McDaniels was ever in the house, the victim's house. And he was trying to establish this by suggesting that the victim could not be seen through the kitchen window. But that was not the testimony of McDaniels. McDaniels said he looked through a window, and there's a window in front of the hall. And that's obviously the window he was referencing at the time of his testimony. So the effort to try to establish a line of sight through the kitchen window was of no consequence because it does not establish that McDaniels needed to be in the home in order to see the victim laying on the couch. But didn't Mr. Tucker say that McDaniels came in and stabbed the victim and Tucker booked it out? He left a woman to be stabbed multiple times. And his lover ran here without a word. It's absurd. I mean, you look at all the physical evidence that supports the state's case. The back door was kicked in. They did not. The defendant is suggesting that both gentlemen were allowed entry into the home by the victim. You know, this is a brutal, heinous crime. And this defendant has admitted to specifics as to how he stabbed this woman, where he stabbed this woman, and how he allowed her to bleed to death on her bedroom bed. And I don't see how the jury could possibly have found anything other than what they did. And the suggestions there are now raised by the defendant and the senator. And his appeal, I think, are frivolous mistakes that the jury obviously was not looking at and could not have been swayed even if these alleged errors weren't present. If there are no other questions from the court, thank you. Thank you. Good to see you. Thank you, gentlemen. This matter will be taken under advisement. Oh, I'm sorry. I guess I'm going to try to just move on. I apologize. Thank you, Justice Stewart. Mr. McCarthy, I apologize. Thank you. Counsel makes the point that no trial is perfect. I've been doing this job for 22 years. I've never read anything like this. This trial is far from perfect. Counsel also said that the fact that my client's semen was found in the vaginal swab is proof of rape. No, it's not. It's proof of sex. It's not proof of murder. There was no other physical evidence at all, a bloody fingerprint or anything, that would tie my client to this crime scene. And counsel makes the point that... Well, what about the semen? It's proof of sex. But it's tying it to the crime scene. I mean, clearly the underpants were hanging off her leg, and that's the crime scene. Well, based on my client's testimony, he just finished having sex with Jada when Mr. McDaniels came into the room and took over. Right, I understand that. But I thought you had said there was nothing to tie him to the crime scene. Oh, I meant other than the semen. Oh, okay. There was no bloody fingerprint or anything like that. If I misspoke, I apologize. The fact that defense counsel's drawing was trying to show the kitchen window, counsel says, well, maybe it's this other window. Well, that's why we need an evidentiary hearing to find out exactly what was going on. The door was kicked in. We don't know who kicked in the door. It wasn't an imprint matched to my client or anything like that. There are several questions that can be answered with an evidentiary hearing in this case. I believe it deserves to go forth if there are no further questions. Thank you. Thank you for coming such a long way, both of you. Now this matter will be taken under consideration. I think that concludes our afternoon docket today, so the court will be in recess. Thank you both. All rise.